UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO: 04-11933-NMG

SPINIELLO COMPANIES,
Plaintiff,

v.

BRICO INDUSTRIES, INC.
Defendant.

**DEFENDANT BRICO INDUSTRIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This matter involves a commercial construction dispute arising from the rehabilitation of a water pipeline (the "Project"). The Massachusetts Water Resources Authority ("MWRA"), a non-party, was the Project owner. Plaintiff, Spiniello Companies ("Spiniello"), was the prime contractor for the Project. This suit involves the inner pipe seals that were used for the Project. Spiniello retained ODF Contracting Company, Inc. ("ODF"), a non-party, as a subcontractor to supply and install the seals. ODF purchased the seals from defendant Brico Industries, Inc. ("Brico").

Spiniello has claimed that certain of the seals were defective. Spiniello has brought a Five Count Complaint against Brico, the only defendant, as follows: (1) Count I—Breach of Contract; (2) Count II—Negligent Misrepresentation; (3) Count III—Negligent Design; (4) Count IV—Breach of Express and Implied Warranties; and (5) Count V—M.G.L. Chapter 93A. Brico seeks summary judgment on all counts.

## I. UNDISPUTED FACTS

Spiniello is a utility contractor that performs pipeline rehabilitation projects. Deposition

of Spiniello's Rule 30(b)(6) Designee, Jose Collazo ("Collazo Depo.") at 22 **(Ex. 1).**[1] Spiniello entered into written contract Number 6820, dated March 1, 2000, with the Massachusetts Water Resources Authority for the rehabilitation of the Weston Aqueduct Supply Mains 1 and 2, in Newton, Massachusetts. Complaint at ¶ 6 **(Ex. 2)**. As part of the subject Project, Spiniello was to install inner seals in the pipeline. Complaint at ¶ 7 **(Ex. 2)**. In the Project specifications, the MWRA lists Brico as one of three potential suppliers for the inner seals. Complaint at ¶ 8 **(Ex. 2)**.

On or about March 7, 2000, Spiniello submitted to Brico what it describes as a "preliminary purchase order" for the purchase of inner seals. Complaint at ¶ 13 **(Ex. 2)**. Spiniello, however, did not purchase any seals from Brico pursuant to the "preliminary purchase order." Rather, Spiniello retained a separate subcontractor, ODF, to supply and install the seals. Complaint at ¶ 16 **(Ex. 2)**; Collazo Depo. at 66 **(Ex. 1)**. Spiniello elected to retain ODF, a minority business enterprise, to supply and install the seals so to comply with Massachusetts law regarding minority participation in construction projects. Collazo Depo. at 67 **(Ex. 1)**. To that end, Spiniello entered into a written subcontract agreement with ODF, dated June 12, 2000, wherein it agreed that ODF would supply, install and test the inner seals. ODF Subcontract **(Ex. 3)**; Spiniello's Answers to Brico's Request for Admissions, No. 9, **(Ex. 4)**; Collazo Depo. at 66 **(Ex. 1)**. According to Spiniello's Complaint: "[O]n or about June 20, 2000, Spiniello, through its installation subcontractor, ODF, entered into the confirmatory and final purchase agreement with Brico for the Type II Inner Seals (the "Contract"). Complaint at ¶ 16 **(Ex. 2)**. Spiniello confirmed this at its deposition:

Q. Did Spiniello have a contract with ODF Contracting?

[1] Unless otherwise referenced, all exhibits are attached to the Affidavit of Thomas C. Federico, Esq. ("Federico Aff."), which is submitted with Brico's Motion for Summary Judgment. .

A. Yes.

Q. And what was the agreement between ODF and Spiniello?

A. They would install the seals.

***

Q. Were they to supply the seals as well?

A. And supply the -- Yes. Supply the seals. Install -- Furnish and install and test the seals.

Q. And Spiniello informed both the MWRA and CDM[2] that ODF would supply and install these seals; is that correct?

A. That's correct.

Q. And Spiniello informed both the MWRA and CDM that ODF was going to supply and install the seals for the entire project, correct?

A. Yes.

Q. Why did Spiniello hire ODF?

A. In order to comply with Massachusetts law, whatever the number is, you have to have some minority involvement.

Collazo Depo. at 66-67 **(Ex. 1).**

In the Purchase Order, ODF specified the precise number and type of seals needed for the Project, including measurements. June 20, 2000 Purchase Order **(Ex. 5).** Spiniello provided all of the measurements for the seals. Collazo Depo. at 63 **(Ex. 1).** Brico supplied a portion of the seals for the Project. Complaint at ¶ 18 **(Ex. 2).**

On or about July 24, 2000, ODF started installing the seals on the Project, pursuant to its subcontract. Complaint at ¶ 19 **(Ex. 2)**. Spiniello claims that it became aware of problems with the installation of the Brico seals on or about July 27, 2000. Spiniello's Admissions, No. 11 **(Ex. 4)**. In its Complaint, Spiniello further states, "[o]n or about September 11, 2000, Spiniello

---

[2] Project engineer Camp, Dresser & McKee, Inc. ("CDM").

advised Brico of a preliminary cost impact and damages report resulting from the Brico Seal failure." Complaint at ¶ 32 **(Ex. 2)**. Spiniello sent Brico several letters in 2000 alleging that Brico's seals were deficient. Affidavit of Brico Vice President Robert J. Card, P.E., ¶ 3 ("Card Affidavit").[3] Spiniello's letter of August 28, 2000 to Brico notes that the "deadline for resolution of this seal problem is Friday, September 8, 2000 . . . ." Card Affidavit, Ex. 1 thereto. Spiniello's letter of September 11, 2000 states that Spiniello has sustained losses due to Brico's "defective seals." Card Affidavit, Ex. 2 thereto.

Spiniello filed the present Complaint on April 9, 2004 in Middlesex Superior Court. This action was removed to this Court on September 3, 2004. Spiniello claims economic costs due to alleged problems with the manufacture of the seals. Spiniello is not making any claim for personal injury or damage to property other than the seals themselves. Spiniello's Admissions, Nos. 13-15 **(Ex. 4)**; Complaint ¶ 56 **(Ex. 2)**.

## II. STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure allows for the prompt disposition of controversies on their merits without a trial if no real dispute as to their salient facts exists. Fed. R. Civ. P. 56(c). The First Circuit in McCarthy v. Northwest Airlines, Inc., 56 F.3d 313 (1st Cir. 1995), delineated the standard for when the plaintiff bears the burden of proof when faced with a motion for summary judgment as follows:

> [plaintiff] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." . . .
>
> When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation." If no genuine

[3] The Affidavit of Robert J. Card, P.E. is submitted with Brico's Motion for Summary Judgment.

issue of material fact emerges, then the motion for summary judgment may be granted.

Id. at 315 (internal citations omitted). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the United States Supreme Court held that summary judgment for the defendant is mandated, not merely permitted, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. By the above standard, Brico is entitled to summary judgment. Spiniello's claims are addressed below in the order brought in the plaintiff's Complaint.

## III. ARGUMENT

### A. THE BREACH OF CONTRACT COUNT (COUNT I) FAILS

#### 1. SPINIELLO WAS NOT THE BUYER OF THE SEALS AND LACKS PRIVITY OF CONTRACT

There is no contract between Spiniello and Brico for the purchase of the subject seals. As alleged by the plaintiff, the actual sale of the inner seals was between ODF and Brico, eliminating any privity of contract, which is necessary for Spiniello to maintain its contract claim. The interpretation of a contract is ordinarily a question of law for the court. Fairfield 274-278 Clarendon Trust v. Dwek, 970 F.2d 990, 993 (1st Cir. 1992). As a sale of goods, the Uniform Commercial Code (UCC) applies to this case.[4] The UCC defines a buyer as one who "buys or contracts to buy goods." See M.G.L. c. 106, § 2-103(1)(a). Likewise, a seller is one "who sells or contracts to sell goods." See M.G.L. c. 106, § 2-103(1)(d). The UCC defines that a "sale" consists of "the passing of title from the seller to the buyer for a price." M.G.L. c. 106, § 2-106(1).

[4] M.G.L. c. 106, § 2-102 provides that "Unless the context otherwise requires, this Article applies to transaction in goods . . ." Under the UCC, "Goods" is defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale. . ." M.G.L. c. 106, § 2-105(1). The subject transaction involved the purchase and sale of seals, which were movable items, and thus the UCC would apply.

Spiniello was not the "buyer" of the seals from Brico, and thus cannot maintain an action for breach of contract. Despite what Spiniello describes as a "preliminary purchase order," it did not contract to purchase any of the seals from Brico. Spiniello states in its Complaint that ODF, Spiniello's subcontractor, purchased the seals from Brico. Spiniello first states that it entered into a written subcontract with ODF wherein ODF was to supply, install and test the seals. ODF Subcontract **(Ex. 3)**; Spiniello's Answers to Brico's Request for Admissions, No. 9, **(Ex. 4)**; Collazo Depo. at 66 **(Ex. 1)**. Spiniello further states in its Complaint that ODF purchased the seals from Brico. Complaint at ¶ 16 **(Ex. 2)**. The Complaint states as follows: "[O]n or about June 20, 2000, Spiniello, through its installation subcontractor, ODF Contracting Co., Inc. ("ODF"), entered into the confirmatory and final purchase agreement with Brico for the Type II Inner Seals (the "Contract")." Complaint at ¶ 16 **(Ex. 2)**. ODF's subcontract with Spiniello, in fact, specifies that ODF is to purchase the seals, noting the following in the description of work: "Supply And Install Internal Joint Seals 48-Inch Quantity 2000 @ 343.30 each Total $686,600.00" and "Supply And Install Internal Joint Seals 60-Inch Quantity 1060 @ 379.17 each Total $401,920.02." Subcontract **(Ex. 3)**. Moreover, ODF's Purchase Order No. "ODF 486-1," dated June 20, 2000, from ODF to Brico, states that ODF will purchase the above seals from Brico for $808,220. The Purchase Order specifies the purchase of 2000 of the "48"x 11 ¾" w Innerseal II for 48" and 1060 of the "60" x 11 ¾" w Innerseal II for 60." This purchase corresponds directly to the quantity and description of the seals that ODF was to purchase under the subcontract. Purchase Order **(Ex. 5)**.

ODF's Letters of Intent to Spiniello and Spiniello's Monthly Compliance Report to the MWRA also list ODF as the supplier of the seals. **(Ex. 6 & Ex. 7)**. The June 1, 2000 Construction Progress Meeting minutes of Camp Dresser & McKee, Inc., the design engineer,

state that "ODF must be the firm that not only installs the Inner Seals but must also purchase the Inner Seals." **(Ex. 8.)** Further, Spiniello has admitted that it represented to the MWRA, the Project owner and awarding authority, that ODF would both *furnish* and install the seals, and that Spiniello had an agreement with ODF to both *supply* and install the inner seals. Spiniello's Admissions, Nos. 8 and 9 **(Ex. 4).** Thus, the sale of the inner seals was ultimately between ODF and Brico, as set forth in the official documents for the Project, and as stated by the plaintiff in its Complaint. Lacking privity of contract, plaintiff's claim for breach of contract fails.

2. THERE IS NO EVIDENCE OF BREACH OF CONTRACT

While Brico does not concede that it had any contract with Spiniello, the evidence is clear that Brico sold a defined quantity of seals to defined specifications. In doing so, it met any contractual obligation that it had to ODF. The Purchase Order of June 20, 2000 calls for the purchase of a defined quantity of seals with specific measurements. Spiniello acknowledges that Brico provided those seals:

> Q. And there's no claim in this case that Brico did not supply seals with correct measurements, correct?
>
> MS. UPTON: Objection.
>
> THE WITNESS: I don't think so.
>
> Q. So as far as you're aware, Brico supplied seals that fit the measurements that Spiniello gave it?
>
> A. I believe that's what it say in the Jason report.

Collazo Depo. at 85-86 **(Ex. 1).** Thus, pursuant to its agreement with ODF, Brico agreed to provide, and did provide, the number and type of seals specifically requested by ODF.

## B. THE NEGLIGENT MISREPRESENTATION COUNT (COUNT II) FAILS

### 1. THE CLAIM IS BARRED BY THE THREE-YEAR STATUTE OF LIMITATIONS

Spiniello's tort claim for negligent misrepresentation is barred by the three-year statute of limitations. Plaintiff admits that it became aware of problems with the seals in July and September 2000, but filed suit in April 2004. Under Massachusetts law, "[A]ctions of tort . . . shall be commenced only within three years next after the cause of action accrues." M. G. L. c. 260, § 2A.[5] In general, a tort cause of action accrues when the plaintiff is injured as a result of the defendant's unlawful act or omission. Pagliuca v. Boston, 35 Mass. App. Ct. 820, 824 (1994). If the wrong is "inherently unknowable," the cause of action accrues when the plaintiff knows or should know that she has been injured. Id., citing Riley v. Presnell, 409 Mass. 239, 245-48 (1991). The knowledge required to trigger the statute of limitations "is not notice of every fact which must eventually be proved in support of the claim," but rather "knowledge that an injury has occurred." Id., citing White v. Peabody Constr. Co., 386 Mass. 121, 130 (1982). Thus, a potential plaintiff need not be aware of every fact that must be proved to prevail upon a claim before the statute of limitations period begins to run. Id. at 824. The determinative question is whether or not the plaintiff had sufficient notice that he ought to have been aware of his injury or loss. White v. Peabody Constr. Co., 386 Mass. at 129-130. "A cause of action accrues on the happening of an event likely to put the plaintiff on notice." Id. "A plaintiff who invokes the discovery rule by claiming that [its] delay in filing suit stems from a failure to recognize the cause of [its] injuries bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge." Darviris v. Petros, 59

---

[5] Although Brico contends that Spiniello is barred from pursuing its negligent design claim based on the economic loss doctrine, as argued in Part C, in the event the Court allows the claim to proceed, it, too, is barred by the three-year statute of limitations.

Mass. App. Ct. 323, 327 (2003). Summary judgment is merited where the plaintiff fails to show that she should not have known that the triggering event caused her damages. Id.

Spiniello has acknowledged that it was aware of the alleged problems with the seals well before three years prior to filing suit. Spiniello forwarded to Brico several letters in mid-2000 explicitly stating that the seals were defective, and seeking to hold Brico financially responsible. Nevertheless, Spiniello did not file this suit until April 9, 2004, well after three years from the date that it was on notice. Specifically, according to Spiniello's Admissions, it became aware of problems with the installation of Brico seals on the Project in July 2000. See Spiniello's Admissions, No. 11, which provides as follows:

> **REQUEST NO. 11**
>
> Spiniello was first aware of problems with the installation of the inner seals supplied by Brico on or before July 27, 2000.
>
> **RESPONSE NO. 11**
>
> ADMITS. Spiniello first became aware of problems with the installation of Brico seals on or about July 27, 2000.

Spiniello's Admissions, No. 11 **(Ex. 4)**. In its Complaint, Spiniello states, "[o]n or about September 11, 2000, Spiniello advised Brico of a preliminary cost impact and damages report resulting from the Brico Seal failure." Complaint at ¶ 32 **(Ex. 2)**. Moreover, correspondence from Spiniello, attached as exhibits to the Affidavit of Robert J. Card, P.E. of Brico, ¶ 3, show that as of mid-2000, Spiniello had concluded that Brico was the cause of its claim, and was actively and aggressively seeking financial recovery from Brico. Because Spiniello did not file this action until April 9, 2004, its claim for negligent misrepresentation, as well as its claim for negligent design (discussed below), are barred by the three-year statute of limitations.

2. SPINIELLO HAS FAILED TO PROFFER ANY EVIDENCE OF A MISREPRESENTATION OF KNOWN FACT

The negligent misrepresentation claim also fails as plaintiff has failed to allege or proffer any evidence that Brico misrepresented any fact. To recover for negligent misrepresentation, a plaintiff must show that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information. Cummings v. HPG International, 244 F.3d 16, 24 (1st Cir. 2001). To prove a claim of negligent misrepresentation under Massachusetts law, plaintiff must show that Brico provided it with false information and "with failure to exercise reasonable care or competence in obtaining or communicating the information." Nota Constr. Corp. v. Keyes Assoc., 45 Mass. App. Ct. 15, 20 (1998). Only statements of fact are actionable; statements of opinion cannot give rise to a negligent misrepresentation action. Cummings v. HPG International, 244 F.3d at 21 ("There is an important threshold determination for any misrepresentation claim, be it for deceit or for negligent misrepresentation; only statements of fact are actionable; statement of opinion cannot give rise to a deceit action.") A "representation is one of opinion 'if it expresses only (a) the belief of the maker, without certainty, as to the existence of fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment.'" Id. at 21, citing McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573 (1995) (quoting Massachusetts Restatement (Second) of Torts § 538A). "In contrast, statements that are susceptible to actual knowledge can give rise to a claim of deceit, if those statements are false." Id. at 22, citing Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991).

In the present case, Spiniello claims that it was induced to utilize Brico's seals by Brico's

representation that the seals would meet the requirements of the Project specifications. Complaint at ¶ 48 **(Ex.2)**. However, Spiniello has failed to provide any evidence that such representations, even if shown, were indeed false when made, or were susceptible to actual knowledge. See Cummings v. HPG International, 244 F.3d at 25 (granting summary judgment on plaintiff's negligent misrepresentation claim as it had no proof that defendant's statements were false at the time they were allegedly made). In Cummings, for example, the plaintiff claimed that the defendant manufacturer of roofing materials misrepresented the future performance of roofs sold to the plaintiff. Id. at 20. The District Court granted summary judgment to the defendants on the counts for both deceit and negligent misrepresentation. Id. The District Court held, and the Court of Appeals affirmed, that the plaintiff failed to adduce any evidence that the manufacturer either did know, or should have known, that the roof would not perform in the future. Id. at 25. The Court reasoned as follows: "The future performance of the roofs cannot alter what [manufacturer] HPG knew at the time the statements were made. Accordingly, Cummings' negligent misrepresentation claim, like its deceit claim, must fail." Id.

In the present case, the mere allegation that the seals were defective, as Spiniello claims, is not sufficient evidence to demonstrate that alleged defect in the seals was a known or knowable fact when the alleged misrepresentations were made. Assuming Spiniello proves that any representations were even made, Spiniello has not proffered any evidence to show that Brico, in advance of selling the seals to ODF, knew, or should have known, that they would be problematic, as alleged.

### C. THE NEGLIGENT DESIGN COUNT (COUNT III) FAILS AS THE CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS AND THE ECONOMIC LOSS DOCTRINE

For the reasons set forth in Part B above, the plaintiff's claim for negligent design is also

barred as a matter of law as plaintiff has failed to bring this action within the applicable three-year statute of limitations period. Plaintiff's claim for negligent design is also barred by the economic loss doctrine. Massachusetts law holds that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993).[6] In the absence of personal injury or physical damage to plaintiff's property, a negligent actor is not liable in tort for economic losses. Berish v. Bornstein, 437 Mass. 252, 267 (2002); FMR Corp., 415 Mass. at 395; Stop & Shop v. Fisher, 387 Mass. 889, 893-94 (1983). Economic loss includes "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property." Marcil v. John Deere Indus. Equip. Co., 9 Mass. App. Ct. 625, 630 n. 3 (1980). The economic loss doctrine is applicable to construction claims. McDonough v. Whalen, 365 Mass. 506, 513, 514 (1974).

The economic loss doctrine also applies to the purchase and sale of products, as well as negligent design claims. Berish v. Bornstein, 437 Mass. at 267. It provides that purely economic losses are not recoverable in negligence and strict liability actions in the absence of personal injury or damage to property other than the alleged defective product itself. See Sebago v. Beazer East Inc., 18 F. Supp. 2d 70, 89-90 (D. Mass. 1998); Jacobs v. Yamaha Motor Corp., 420 Mass. 323, 329 n. 5 (1995). "[W]here a commercial product injures itself and nothing or no one else, there is no need to create a product liability cause of action independent of contract obligation." Cummings v. HPG International, 244 F.3d at 18.

By Spiniello's own admission, it is not making any claim in this case for personal injury

---

[6] Brico makes this argument specifically to the negligent design count. The First Circuit has stated that Massachusetts law is unclear whether the economic loss doctrine will provide a defense to a claim for negligent misrepresentation. Cummings v. HPG International, 244 F.3d at 18, citing Nota Construction v. Keyes, 45 Mass. App. Ct. 15 (1988). Brico, however, does not waive its argument that the economic loss doctrine would also preclude the claim for negligent misrepresentation.

or damage to property other than the seals themselves. Spiniello's Admissions, Nos. 14 and 15 **(Ex. 4)**. Rather, it seeks damages for "the investigation, monitoring, replacement and repair of the internal pipe-joint seals as well as significant lost revenue and delay damages." Complaint ¶ 56 **(Ex. 2)**. As Spiniello's alleged damages are purely economic losses, Spiniello's negligent design claim is barred by the economic loss doctrine.

**D. PLAINTIFF'S CLAIMS FOR BREACH OF EXPRESS AND IMPLIED WARRANTY (COUNT IV) FAIL**

1. THE BREACH OF WARRANTY CLAIMS FAIL IN THE ABSENCE OF PRIVITY OF CONTRACT

In a contract based breach of warranty action under the UCC, a commercial plaintiff must allege privity of contract to maintain a breach of warranty action under a theory of breach of either express or implied warranty. Sebago v. Beazer East Ins., 18 F. Supp. 2d at 81-82 (D. Mass. 1998); see also Irish Venture, Inc. v. Fleetguard, Inc., 270 F. Supp. 2d 84, 87 (D. Mass. 2003); Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), 263 F. Supp. 2d 140 (D. Mass. 2003); W.R. Construction & Consulting, Inc. v. Jeld-Wen, Inc., 2002 U.S. Dist. LEXIS 18686. These holdings expressly address M.G.L. c. 106, § 2-318[7] of the UCC, which abolishes the privity requirement in certain situations, and have concluded that Section 2-318, as interpreted by the Massachusetts Courts, still requires privity of contract in commercial, contract-based warranty claims for economic damages. In the present case, there is no such privity of contract between Spiniello and Brico and, therefore, the warranty claims under the UCC must be

---

[7] M.G.L. c. 106, § 2-318 provides as follows, in relevant part:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, . . . , although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. . . . All actions under this section shall be commenced within three years next after the date the injury and damage occurs.

dismissed

As a preliminary matter, Massachusetts law draws a distinction between tort-based warranty claims that allege personal injury or property damage, other than to the product itself, and contract-based breach of warranty actions. See e.g, Wilson v. Hammer Holdings, Inc., 850 F.2d 3, 7-8 (1st Cir. 1988). Tort-based warranty claims are, in essence, product liability actions, and are subject to the three-year statute of limitations set forth in M.G.L. c. 106, § 2-318. Contract-based warranty claims involve solely economic costs as a result of a product's failure, and are subject to the four-year statute of limitations set forth in M.G.L. c. 106, § 2-725. Bay State-Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107 (1989).

While M.G.L. c. 106, § 2-318 does abolish the privity requirement for certain warranty claims, this Court has recognized that it does so only for tort-based warranty claims (i.e. product liability actions), and contract-based warranty claims involving consumers transactions, based on the special legislative treatment of consumer claims. Thus, privity of contract is required for a commercial plaintiff to assert a breach of warranty claim seeking only economic damages, as in this case. In Sebago v. Beazer East Inc., 18 F. Supp. at 82-85, this Court dismissed a claim for breach of express and implied warranty where the plaintiffs, a commercial entity, failed to allege privity of contract. This Court undertook a lengthy analysis, which, in part, states:

> The Massachusetts version of § 2-318, which was amended in 1971 to abolish the privity of contract requirement in breach of warranty cases, does not explicitly limit its coverage to cases in which the plaintiff has suffered personal injury as a result of the defective product. . . . Thereafter, however, "several opinions [] brought Massachusetts law into accordance with the majority of states by making it clear that section 2-318 does not abolish the privity requirement when the plaintiff seeks to recover solely economic damages." (Citations omitted). . . .
>
> In Jacobs v. Yamaha Motor Corp., 420 Mass. 323, 330, 649 N.E.2d 758 (1995), however, the Massachusetts SJC rejected . . . that the initial goal of providing remedies for personal injuries caused by breach of warranty should wholly limit

> the relief available under § 2-318 to buyers of substandard goods in contract-based causes of action. . . . The Jacobs decision has been read as creating an exception to the requirement of privity in suits against remote manufacturers only for plaintiffs who purchase consumer goods. (Citations omitted.) . . . Upon review of the foregoing authorities, this court agrees . . . that commercial plaintiffs must allege privity to maintain a breach of warranty action against a manufacturer.

Sebago v. Beazer East Inc., 18 F. Supp. at 82-85; see also W.R. Construction & Consulting, Inc. v. Jeld-Wen, Inc., 2002 U.S. Dist. LEXIS 18686 (finding that under Massachusetts law, "a contract-based breach of warranty claim involving a commercial transaction still requires privity of contract."); Irish Venture, 270 F. Supp. at 87 (2003) ("[T]he SJC has strongly suggested that privity is still required in commercial transactions despite the apparently broad reach of M.G.L. ch. 106, § 2-318"); Superior Kitchen Designs, 263 F. Supp. 2d at 144 n. 4 (recognizing that this Court has "held that Section 2-318's relaxed privity requirement is limited to suits against remote manufacturers by plaintiffs that purchased *consumer goods*, that is, it does not apply to a commercial plaintiff alleging a breach of warranty action against a manufacturer").

In the present case, this Court should conclude, as it did in the above cases, that privity of contract is required of a plaintiff asserting a breach of warranty case in a non-consumer context, where the claim is solely for economic costs, and not a tort-based warranty claim. Applying this standard to the present case, there is no dispute that plaintiff seeks only economic damages, and thus is not claiming a tort-based breach of warranty. There is no claim for personal injury or property damage other than the product itself. Economic loss refers to "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property." Marcil, 9 Mass. App. Ct. at 630 n. 3. As discussed in the preceding section, plaintiff has admitted that it seeks only

economic damages.[8] As discussed above, there is no privity of contract between Spiniello and Brico. Finally, the transaction occurred in a commercial setting, and not as a consumer transaction. The transaction involved the sale of seals for use in the renovation of a pipeline for the MWRA. In the absence of privity of contract between Brico and Spiniello, and in the absence of the sale being a consumer transaction, the warranty-based claims must be dismissed.

2. THERE CAN BE NO BREACH OF WARRANTY WHERE BRICO PROVIDED GOODS ACCORDING TO PLANS AND SPECIFICATIONS

Under Massachusetts law, an express warranty in a contract is a promise of a particular standard of performance, which the warrantor is obligated to fulfill. Sparks v. Fidelity Nat.'l Title Ins. Co., 294 F.3d 259, 272 (1st Cir. 2002). "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." M.G.L c. 106, § 2-313. Based on the evidence and undisputed facts of this case, there is no evidence to suggest that Brico promised any standard of performance regarding the seals. Rather, Brico sold goods pursuant to defined plans specifications.

Moreover, when "goods are provided according to plans and specifications furnished by the buyer, the seller does not impliedly warrant their fitness for a particular purpose . . . ." Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co., 25 Mass. App. Ct. 530, 535 (1988); see M. G. L. c. 106, § 2-316, comment 9 ("The situation in which the buyer gives precise and complete specifications to the seller . . . is a frequent circumstance by which the implied warranties may be excluded").

In its Purchase Order, ODF specified the number and type of seals needed for the Project. In addition, Spiniello provided all of the measurements for the seals requested. Collazo Depo. at 63 **(Ex. 1).** Where Brico merely supplied seals in accordance with the ODF Purchase Order and

[8] Alternatively, if plaintiff were to argue that its warranty claims sound in tort, then the three-year statute of limitations set forth in M.G. L. c. 106, § 2-318 would apply, for the reasons set forth in this memorandum.

to the precise measurements provided, it cannot be said that ODF relied on Brico's skill and judgment in selecting the seals and, thus, there was no implied warranty of fitness for a particular purpose. Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co., 25 Mass. App. Ct. at 535.

**E. PLAINTIFF'S CLAIM FOR VIOLATION OF M.G.L. c. 93A (COUNT V) FAILS**

Viewed in their best light, Spiniello's allegations do not rise to the level of a violation of M.G.L. c. 93A, § 11. In order to prevail, Spiniello must show that Brico's conduct fell "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, oppressive or unscrupulous." PMP Assoc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1st Cir. 1975). Generally speaking, "the defendant's conduct must be not only wrong, but also egregiously wrong—and this standard calls for determinations of egregiousness well beyond what is required for most common law claims." Mass. Sch. of Law at Andover, Inc. v. American Bar Assoc., 142 F.3d 26, 41 (1st Cir. 1998) (citations omitted). "Although . . . a Chapter 93A violation need not rest on an independent common law tort, the conduct must come within some shouting distance of some established concept of unfairness." Id. at 42 (citations omitted).

The allegations against Brico do not rise to the level of unfair and deceptive conduct that is necessary for Spiniello to recover under Chapter 93A. At best, plaintiff claims that Brico, committed an ordinary breach of contract, or was negligent. The First Circuit has held that the economic loss doctrine restricts Chapter 93A liability for negligently-caused economic harm, and permits such recovery for such harm in special circumstances, for example, where the defendant engages in an intentional tort. Canal Elec. Co. v. Westinghouse Elec. Corp., 973 F.2d 988, 998 (1st Cir. 1992). Negligence, standing alone, does not constitute a violation of Chapter 93A.

Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 400 (2003). A simple breach of contract action does not give rise to a Chapter 93A claim. Jetpac Group v. Bostek, Inc., 942 F. Supp. 716, 721 (D. Mass. 1996). In the commercial context, plaintiff's breach of warranty claims do not automatically give rise to liability under Chapter 93A. Id. In this case, plaintiff has asserted claims sounding in ordinary negligence and breach of contract and has not alleged conduct amounting to an intentional tort or fraudulent conduct. As such, there is no evidence to suggest a basis for plaintiff to make a showing that Brico's conduct fell "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, oppressive or unscrupulous." PMP Assoc., 366 Mass. at 596. Brico, therefore, is entitled to summary judgment on Spiniello's claim for violation of M.G.L. Chapter 93A.

## CONCLUSION

For all of the foregoing reasons, Brico requests the Court to enter summary judgment in its favor on all counts of the Complaint, as well as enter any other relief deemed meet and proper.

Respectfully submitted,
Defendant,
BRICO INDUSTRIES, INC.

*/s/ Thomas C. Federico*

Thomas C. Federico, BBO #160830
Philip M. Hirshberg, BBO #567234
Grace V. Bacon Garcia, BBO #640970
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
Tel. (617) 439-7500

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 5 October 2006.

/s/ *Thomas C. Federico*

Thomas C. Federico, BBO #160830