## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SPINIELLO COMPANIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-11933-NMG |
| | ) | |
| BRICO INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AFFIDAVIT OF JOSE J. COLLAZO IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I, Jose J. Collazo do depose and say:

1.  I am a chief engineer and estimator of Spiniello Companies ("Spiniello") and was Vice President and an officer of the company at the time of the Project.

2.  I make the following representations based upon my personal knowledge and involvement with the construction project and claim at issue, review of the documents from Spiniello's files and documents produced to Spiniello by Brico Industries, Inc. ("Brico") in discovery, and communications with Spiniello employees.

3.  The attachments hereto constitute true and accurate copies of documents from Spiniello's files or produced to Spiniello during the discovery in this case.

4.  This lawsuit and claim arises out of the construction and rehabilitation of a portion the Weston Aqueduct Supply Mains 1 and 2 (the "Project").

5.  After public bidding, Spiniello entered into a general contract with the Massachusetts Water Resources Authority ("MWRA") to perform the work at the Project.

6. Spiniello's work on the Project involved cleaning and lining of water pipes, which included the provision of internal pipe-joint seals ("inner seals") and external pipe-joint seals ("external couplings") on the joints of the forty-eight and sixty-inch water main pipes.

7. Attached hereto as Exhibit A is a true and accurate copy of the Project specification section 02776.

8. Brico and its sales representatives contacted Spiniello regarding the supply of the inner seals and external couplings on numerous occasions, prior to and after Spiniello's submittal of its bid to the MWRA.

9. Prior to Spiniello's bid submittal, Brico and its sales representatives represented that Brico had worked closely with the MWRA and the Project engineer and was intimately familiar with the Project needs and that its product was the favored inner seal and would meet all of the Project requirements.

10. Attached hereto as Exhibit B is a true and accurate copy of the December 20, 1999 Quotation from Brico to Spiniello.

11. Spiniello relied upon Brico's representations and incorporated the costs for Brico's products in its bid to the MWRA for the Project.

12. After award of the Project, and in reliance on Brico's representations that its products would meet the Project specifications, on or about March 7, 2000, Spiniello submitted purchase order No. 51566 to Brico for internal pipe-joint seals and external couplings on the Project.

13. Attached hereto as Exhibit C is a true and accurate copy of Spiniello's March 7, 2000 Purchase Order to Brico.

14. Attached hereto as Exhibit D is a true and accurate copy of Brico's Purchase Order Confirmation to Spiniello dated March 27, 2000.

15. Attached hereto as Exhibit E is a true and accurate copy of Brico's March 31, 2000 submittal for the inner seals.

16. At the time of bidding, Spiniello intended to utilize Iron Construction Co., Inc. as the subcontractor to purchase and install the inner seals and couplings.

17. After award of the Project, Iron Construction Co., Inc. was unable to perform the work and Spiniello began the process of entering into the necessary contracts itself for the provision of the inner seals and external couplings.

18. Around the time that Spiniello and Brico entered into purchase order 51566, Brico began preparing the submittals required by the Project specifications to Spiniello for transmittal to CDM and the MWRA for approval.

19. Spiniello was subsequently permitted by the MWRA and CDM to substitute ODF Contracting Co. Inc. ("ODF") as subcontractor for the inner seals.

20. It was Spiniello's intent that ODF would satisfy Spiniello's requirements for minority business participation in the Project. Later in the Project, ODF breached its subcontract with Spiniello, abandoning the Project and ceasing performance. Spiniello received a waiver from the MWRA for its minority business enterprise requirements as a result of ODF's abandonment.

21. After Spiniello had entered into the purchase order with Brico, At CDM's request and in order to meet minority business participation requirements, it was recommended that Spiniello route its purchase of the inner seals through its installation subcontractor, ODF Contracting, Inc.

22. Shortly after entering into the subcontract with ODF, Spiniello understood that ODF was beginning to experience financial difficulties.

23. It was Spiniello's intent for ODF to take-over the purchasing of the inner seals and couplings.

24. Spiniello understood that Brico never accepted or acted upon ODF's purchase order. Spiniello had no part in the drafting, review or submittal of ODF's purchase order to Brico.

25. Brico continued to deal with Spiniello for the purchasing of the inner seals and external couplings, shipping products to Spiniello and issuing invoices to Spiniello and corresponding with Spiniello regarding cancellation of any portion of the purchase order.

26. Spiniello continued to deal directly with Brico regarding the purchasing, shipment, problems and cancellation relating to the inner seals and external couplings.

27. Spiniello never transferred its contract with Brico to ODF and Spiniello never routed its purchases of Brico products through ODF.  ODF never billed Spiniello for inner seals.

28. Attached hereto as Exhibit F are true and accurate copies of shipment and freight documents from Brico, dated July 20, 2000 and August 4, 2000.

29. On or about July 24, 2000, Spiniello and ODF began the installation of the Brico inner seals in accordance with Brico's installation procedures on the sixty inch pipes at the Project.

30. The installation of inner seals on the sixty inch pipes was required by the MWRA to be completed on or before October 3, 2000.

31. Attached hereto as Exhibit G is a true and accurate copy of the Resident Engineer's Daily report dated July 24, 2000.

32. Attached hereto as Exhibit H are true and accurate copies of the Resident Engineer's Daily reports dated July 25 and July 26, 2000.

33. Spiniello and CDM's engineer tested the inner seals in accordance with Brico's installation guidelines, introducing 5 psi of air pressure and spraying the edges of the seal looking for bubbles indicative of air leaks. This is a standard and common means in the industry to test installed inner seals. Spiniello witnessed that the resident engineer failed those seals in which bubbles were escaping from between the seals and the pipe, which such bubbles indicate an air leak. The Resident Engineer failed a large portion of the Brico seals.

34. Attached hereto as Exhibit I are true and accurate copies of the Resident Engineer's Daily reports dated July 31, August 1 and August 7, 2000.

35. Attached hereto as Exhibit J is a true and accurate copy of the August 9, 2000 memorandum from Brico to Spiniello.

36. Attached hereto as Exhibit K are true and accurate copies of the Resident Engineer's Daily reports dated October 19, 2000 and January 25, 2001.

37. On or about August 8, 2000, Spiniello hired a third-party consultant to review the inner seals and their installation.

38. Attached hereto as Exhibit L is a true and accurate copy of the Resident Engineer's Daily report dated August 23, 2000.

39. Spiniello discovered that a portion of the sixty inch pipes contained beveled ends and the Brico inner seals failed to meet the required sealing properties.

40. Attached hereto as Exhibit M is a true and accurate copy of the Jason Consultants Report dated August 30, 2000.

41. Spiniello and its consultant identified certain concerns regarding the design of the Brico seal and its inability to meet the Project specification as well as what appeared to be manufacturing defects that impacted the inner seals' ability to function properly.

42. Brico agreed to modify the inner seals, creating a wider steel retention band.

43. Attached hereto as Exhibit N is a true and accurate copy of the Resident Engineer's Daily Report, dated September 6, 2000.

44. Brico's revised inner seal failed to pass the required testing and Brico's representatives concluded and communicated to Spiniello that its product could not meet the requirements for the Project.

45. As inducement to continue the relationship and the purchase order between Brico and Spiniello, Brico represented to Spiniello that it would reimburse Spiniello for extra installation, testing and delay costs it was incurring as a result of the failures of the Brico seals.

46. Attached hereto as Exhibit O is a true and accurate copies of the September 15, 2000 letter from Brico to Spiniello.

47. Attached hereto as Exhibit P is a true and accurate copy of the September 20, 2000 letter from Brico to Spiniello.

48. Attached hereto as Exhibit Q is a true and accurate copy of the October 3, 200 letter from Spiniello to Brico.

49. Attached hereto as Exhibit R is a true and accurate copy of the October 17, 2000 letter from Brico to Spiniello.

50. Attached hereto as Exhibit S is a true and accurate copy of the October 25, 200 letter from Brico to Spiniello.

51. In all prior information from Brico, there was never an indication that Spiniello would have to do extra work welding restraints on the pipes for the Brico external coupling to function.

52. The specifications do not require or suggest that external transition couplings require welding additional restraints.

53. As a result of Brico's product failing to perform as promised and required by the specifications, Spiniello was required to supply additional labor, testing and materials to make the external couplings perform as required.

54. Attached hereto as Exhibit T are true and accurate copies of the Invoices from Brico to Spiniello dated July 20, 200, July 26, 2000 and July 29, 2000.

55. Attached hereto as Exhibit U is a true and accurate copy of the facsimile from Spiniello to Brico dated May 12, 2000.

56. Attached hereto as Exhibit V is a true and accurate copy of the August 16, 2000 Quotation from Brico to Spiniello.

57. Attached hereto as Exhibit W is a true and accurate copy of the February 5, 2001 facsimile from Brico to Spiniello.

58. Attached hereto as Exhibit X is a true and accurate copy of the February 13, 2001 letter from Brico's counsel to Spiniello's counsel.

59. Attached hereto as Exhibit Y is a true and accurate copy of the Spiniello Check No. 36996 to Brico.

60. Spiniello cancelled a portion of its purchase order as it related to the inner seals. This cancellation was based, in part, on Brico's own representatives admitting to Spiniello's representatives that the inner seals were not suitable for application at the project.

#611017                              7

61. Attached hereto as Exhibit Z is a true and accurate copy of the November 2, 2000 letter from CDM to Spiniello.

62. Spiniello has reason to believe that Brico was aware of problems with its seals experienced at prior projects with the MWRA and withheld such information from Spiniello.

63. Spiniello understands that, due to the difficulties and failures of Brico's products, The MWRA no longer permits their use in its pipelines.


Signed under the penalties of perjury this 19th day of October, 2006.


Jose J. Collazo